FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2018 OCT -2 PM 1:34

JEFFREY P. COLWELL
CLERK

BY________DEP. CLK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. '18 - CV - 02514

YOUSSEF MOUDDEN,

Plaintiff,

v.

THE UNIVERSITY OF COLORADO AT BOULDER, through its Board, THE REGENTS OF THE UNIVERSITY OF COLORADO, a body corporate,
PHILLIP DiSTEFANO, in his official capacity;
JEFFREY FORBES , in his official capacity;
JOHN CASSANO, in his official and individual capacities;
CORA RANDALL, in her official and individual capacities; and
MELISSA NIGRO, in her official capacity,

Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Youssef Moudden for his Complaint states:

## I. INTRODUCTION

1. Plaintiff is a former Research Associate and Lecturer in the Departments of Aerospace Engineering Sciences and Atmospheric and Oceanic Sciences at the University of Colorado at Boulder ("UCB"). He worked at UCB from June 2007 until he was permanently

terminated at the end of 2016. He was unlawfully discriminated against based on his race and national origin and retaliated against and terminated from his position. Defendants' actions violated Dr Moudden's right to equal protection pursuant to 42 U.S.C. § 1983 and breached a contract with Dr Moudden.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this action.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the unlawful acts giving rise to Plaintiff's claims occurred within the District of Colorado.

4. At all relevant times, Defendant UCB was covered by the definition of "employer".

5. Plaintiff has complied with all administrative, jurisdictional and legal prerequisites to the filing of this action.

## III. PARTIES

6. Plaintiff is an individual who resides within the District of Colorado.

7. Defendant Board of Regents of the University of Colorado at Boulder governs the University of Colorado in Boulder, Colorado and is the proper Defendant for suit in this matter.

8. Defendant Phillip DiStefano is the Chancellor of UCB and resides within the District of Colorado. Defendant DiStefano is sued in his official capacity. Upon information and belief, Chancellor DiStefano is the Appointing Authority for the positions of Instructor, Lecturer and Research Associate and may have delegated such authority to subordinate employees.

9. Defendant John Cassano is employed at UCB and resides within the District of Colorado. Defendant Cassano is sued in his official and individual capacities. Defendant Cassano may have been delegated all or part of Chancellor DiStefano's responsibilities as the Appointing Authority for the positions of Instructor, Lecturer and Research Associate in the Department of Atmospheric and Oceanic Sciences.

10. Defendant Cora Randall is employed at UCB and resides within the District of Colorado. Defendant Randall is sued in her official and individual capacities. Defendant Randall may have been delegated all or part of Chancellor DiStefano's responsibilities as the Appointing Authority for the positions of Instructor, Lecturer and Research Associate in the Department of Atmospheric and Oceanic Sciences.

11. Defendant Jeffrey Forbes is employed at UCB and resides within the District of Colorado. Defendant Forbes is sued in his official capacity. Defendant Forbes may have been delegated all or part of Chancellor DiStefano's responsibilities as the Appointing Authority for the positions of Instructor, Lecturer and Research Associate in the Department of Aerospace Engineering Sciences.

12. Defendant Melissa Nigro is employed at UCB and resides within the District of Colorado. Defendant Nigro is sued in her official capacity.

## IV. FACTUAL ALLEGATIONS

13. Plaintiff commenced his employment at UCB in July 2007.

14. Plaintiff's main duties were to conduct scientific research and engage in scientific activities such as writing research publications and proposals and attend scientific conferences.

15. Plaintiff sought teaching activities at UCB.

16. Plaintiff expressed interest in teaching at the Department of Atmospheric and Oceanic Sciences (ATOC) at many occasions.

17. Throughout the entire period of the alleged discriminating practices, John Cassano is the person in charge of selecting candidates for teaching jobs at ATOC.

18. Throughout the entire period of the alleged discriminating practices, Cora Randall, the chair of ATOC, is the person who makes the final decisions as to who will be hired for teaching duties at ATOC.

19. ATOC, Cora Randall (the chair of ATOC) and John Cassano (the person in charge of selecting candidates) were made aware of Plaintiff's interest in teaching at ATOC in June 11, 2013 when Plaintiff's supervisor in the Department of Aerospace Engineering Sciences contacted them about their recent teaching vacancy and informed them that he has a qualified and interested candidate.

20. Although the position has not been filled yet, John Cassano and Cora Randall declined to consider Plaintiff.

21. ATOC, Cora Randall and John Cassano were again made aware of the Plaintiff's interest in teaching at ATOC in April 26, 2014 when Plaintiff applied for a teaching position which was advertised in an ad at UCB's main job portal. The ad announced that ATOC is seeking candidates to teach ATOC 1050 and ATOC 1060. This is the only time that ATOC used UCB's official procedure for advertising and hiring candidates using UCB's website for teaching positions. At this point John Cassano and ATOC received a copy of Plaintiff's CV and are fully aware of his interest and qualifications.

22. Cora Randall and John Cassano hired a candidate with an inferior teaching experience and inferior research experience. Cora Randall and John Cassano hired a less

qualified candidate.

23. In Aug 6, 2014, Plaintiff contacted John Cassano by email with a different identity. He contacted him as Jason McLeif, a PostDoc at Colorado State University in Fort Collins and inquired about teaching vacancies in ATOC. John Cassano responded that there are no vacancies and that he will keep him informed of future vacancies.

24. Subsequently, John Cassano informed Jason McLeif of every teaching vacancy that ATOC had and invited him to apply at every available occasion. John Cassano has never informed Plaintiff of any teaching vacancy and never invited him to apply for any teaching position.

25. On April 15, 2015 John Cassano informs Jason McLeif and other candidates of a vacant teaching position for ATOC 1050 and invites him to apply for that position. He did not inform Plaintiff Youssef Moudden of the vacancy nor did he invite him to apply. Plaintiff reaches out to John Cassano to apply for the open position, this is the second time Plaintiff sends his CV to John Cassano. This is the third time Plaintiff expresses his interest in teaching at ATOC to John Cassano. John Cassano rejects Plaintiff's application under the pretext that he is "in the final stages of selecting a lecturer".

26. In his response to the Equal Employment Opportunity Commission (EEOC) charge, John Cassano states that "On May 4, 2015, Mr. Moudden contacted Professor Cassano to inquire about teaching position. This was the first time that Professor Cassano had heard from Mr. Moudden." as the reason why Plaintiff was not notified of the open teaching position in the Fall of 2015.

27. The reason provided in paragraph 26 is a false excuse. Plaintiff has already expressed his interest to teach at ATOC twice and John Cassano has already received

Plaintiff's CV and rejected his application twice.

28. In their response to the EEOC charge, Defendants state that: "When Mr. Moudden applied for a position on May 4, 2015, Professor Cassano had already chosen finalists for the vacancy and was in the latter stages of the hiring process."

29. Defendants admit that Plaintiff applied to the open teaching position in the Fall of 2015.

30. Defendants admit that when Plaintiff applied to the open teaching on May 4, 2015 they were still selecting among candidates.

31. Defendants admit that when Plaintiff applied to the open teaching on May 4, 2015 the hiring process was still ongoing.

32. Defendants admit they hired a different candidate at a later date than when Plaintiff applied to the open teaching on May 4, 2015.

33. ATOC, Cora Randall and John Cassano hired a less qualified candidate.

34. On Oct 21, 2015 John Cassano informs Jason McLeif and other candidates of a vacant teaching position for ATOC 1060. He failed to inform Youssef Moudden for the second time although Plaintiff Youssef Moudden previously expressed interest 3 times. After Plaintiff Youssef Moudden makes an inquiry about any vacancies, sends a current CV (for the third time), John Cassano rejects Youssef Moudden's application without giving a reason at the time of the rejection. John Cassano also promises to keep Defendant in mind for future lecturer positions.

35. In his response to the EEOC charge, John Cassano provided the following reason for not hiring Plaintiff: "Mr. Moudden inquired about another ATOC teaching position on October 22, 2015. Professor Cassano considered Mr. Moudden for this vacancy. However,

Professor Cassano had some hesitation regarding Mr. Moudden's credentials. Mr. Moudden received his Ph.D from York University, an institution that Professor Cassano had not heard of until his interactions with Mr. Moudden. Additionally, Mr. Moudden's research focus was on the Martian atmosphere rather than Earth's atmosphere, which is ATOC's focus. Ultimately, Professor Cassano selected Jason English to fill this vacancy. In filling vacancies, ATOC places high value on the institution from which a candidate obtained his PhD. Mr. English earned his PhD from ATOC under the advisement of Professor Cassano's colleague, Professor O. Brian Toon. Mr. English focused his research on Earth's atmosphere, aligning with ATOC's focus."

36. Since John Cassano learned that some of Plaintiff's research is related to Mars he should also have learned that it equally focused on Earth. 3 out of Plaintiff's last 5 research publications in scientific research journals at the time of his application dealt with Earth and 2 dealt with Mars. For many years Plaintiff's research has focused more on Earth than Mars.

37. Plaintiff's research experience relating to Earth's Atmosphere is superior to that of the selected candidate.

38. If John Cassano considered research experience in his selection then Plaintiff is overwhelmingly more qualified than all the other candidates he hired.

39. The reason provided in paragraph 35 is a false pretext.

40. ATOC, Cora Randall and John Cassano hired a less qualified candidate.

41. On May 17, 2016 John Cassano informs Jason McLeif and other candidates of a vacant teaching position for ATOC 1050 and ATOC 1060. He, for the third time, failed to inform Youssef Moudden or invite him to apply although Youssef Moudden expressed interest 4 times and sent his CV 3 time before.

42. John Cassano continuously excluded Plaintiff from open teaching positions.

43. John Cassano continuously failed to inform Plaintiff of open teaching positions.

44. John Cassano continuously failed to invite Plaintiff to apply for open teaching positions.

45. Defendents provided the following reason in their response to the EEOC charge: "Professor Cassano and ATOC place high value in the institution from which a candidate earned his PhD".

46. John Cassano provided the following reason why he rejected Plaintiff for teaching in the spring of 2016: "Professor Cassano considered Mr. Moudden for this vacancy, but Professor Cassano ultimately selected a candidate who had earned his Ph.D. from the ATOC program itself, and whom Professor Cassano knew from his time as a Ph.D. candidate at ATOC.[2]" "[2] As noted above, ATOC places significant emphasis on the institution from which applicant received their degree(s) when filling vacancies for as-needed instructors."

47. Defendant earned his PhD from York University in Toronto, Canada. York University is the third largest University in Canada and consistently ranks among the 10 best universities in Canada. John Cassano could have easily familiarized himself with York University and its reputation.

48. John Cassano does not know where Jason McLeif earned his PhD. So the reason provided in paragraphs 45 and 46 is not the real reason why Jason McLeif was always notified of teaching positions and invited to apply but never Plaintiff Youssef Moudden.

49. The ad for the teaching position advertised in 2014 never mentions that the candidate should be from a University with which John Cassano is familiar or that ATOC

places significant emphasis on the institution from which applicant received their degree. It however says that "A PhD in atmospheric or oceanic sciences or a related field is required at the time of appointment. University level teaching experience is preferred".

50. There has never been a hiring ad from ATOC or UCB that mentioned the institution from which the candidate obtained their degree as part of the hiring criteria, the required or desired qualifications.

51. The reason provided in paragraph 46 is a false pretext.

52. In his response to the EEOC, John Cassano provided the following reason why Jason McLeif was always notified of teaching positions and invited to apply but never Plaintiff Youssef Moudden: "To the extent that Professor Cassano may have proactively contacted Mr. Moudden's fictional identity "Jason Mcleif" to notify him of teaching vacancies, this was because of the weight Professor Cassano placed on "Jason Mcleif's" position with an institution with which Professor Cassano is familiar and holds in high regard."

53. In his response to the EEOC, John Cassano provided the following reason why Jason McLeif was always notified of teaching positions and invited to apply but never Youssef Moudden: "In his initial e-mail as "Jason McLeif," Mr. Moudden describes "Jason McLeif" as a "postdoc in atmospheric sciences at the Colorado State University in Fort Collins." See Exhibit 1, p. 4. Notably, the Department of Atmospheric Science at Colorado State University is a department with which Professor Cassano has considerable familiarity and holds in high regard. Because Professor Cassano believed "Jason McLeif" to be a postdoctoral researcher at an institution which he held in high regard, Professor Cassano reached out to "Jason McLeif" on occasion to notify him of available positions."

54. John Cassano worked at UCB for many years, he is more familiar with UCB than with Colorado State University in Fort Collins. John Cassano holds UCB, the flagship university of Colorado, in high regard.

55. Plaintiff worked at UCB for many years as a Research Associate which is higher than the posdoc position that Jason McLeif supposedly had at CSU. John Cassano is aware of that as he received Plaintiff's CV a total of 3 times.

56. Because John Cassano was more familiar with Plaintiff Youssef Moudden's institution and because Plaintiff's position is superior, John Cassano should have proactively contacted Plaintiff to notify him based on the reasons provided in paragraphs 52 and 53. But he never did not even once.

57. To claim that John Cassano is more familiar with a different university than the one where he actually works, and to use that as a reason why Plaintiff was excluded from employment opportunities is not only false but absurd.

58. The reason provided in paragraphs 52 and 53 is a false pretext.

59. Every single time Plaintiff received preferential treatment as Jason McLeif and was excluded from teaching opportunities he expressed his frustration and extreme dissatisfaction to his direct supervisor, Jeffrey Forbes. Jeffrey Forbes responses were extremely derogatory. At different times, his responses were: "you need to stop whining", "you are a menace", "if war breaks I think you'll be fighting for the other side"…

60. These degrading and veiled racist comments continued throughout the period where Plaintiff was trying to obtain teaching opportunities at UCB.

61. The last time Plaintiff informed Jeffrey Forbes that John Cassano always gives him preferential treatment when he uses the name Jason McLeif over when he uses his real name

Youssef Moudden was in his office in May 2016. The following exchange took place was part of their conversation:

Jeffrey Forbes: "I think he [John Cassano] will be voting for Trump!"

Plaintiff: "I think he will."

62. UCB's Discrimination and Harassment Policy and Procedures state that "Any faculty or staff member who is considered a responsible employee, as defined in Section III, who witnesses or receives information regarding any possible discrimination, harassment or related retaliation based upon protected class is required to promptly report to the Office of Institutional Equity and Compliance (OIEC) all known details about the alleged discrimination, harassment, or retaliation including: (1) Name of the alleged victim; (2) Name of alleged perpetrator; (3) Name of any alleged witnesses; and (4) Any other relevant facts, including the date, time and specific location of the alleged incident."

63. Jefferey Forbes is well aware of UCB's requirement of prompt reporting of any discrimination allegations.

64. Jeffrey Forbes is a responsible employee per UCB's Discrimination and Harassment Policy and Procedures.

65. Jeffrey Forbes did not report Plaintiff's repeated complaints to the Office of Institutional Equity and Compliance (OIEC) regarding John Cassano's and ATOC's discriminating conduct.

66. Instead of following UCB's Discrimination and Harassment Policy and reporting Plaintiff's grievances, Jeffrey Forbes informs ATOC that Jason McLeif and Youssef Moudden are one and the same.

67. Having been tipped-off about the real identity of Jason McLeif, John Cassano

and the chair of ATOC Cora Randall decide on a devious plot to correct the situation to their advantage. This plot includes immediately hiring Plaintiff to teach ATOC 1050 for the Fall of 2016, subject him to a very hostile work environment, undermine his performance and reputation and retroactively claim that he was not qualified to teach.

68. John Cassano decides to interview Plaintiff on June 2nd 2016 and hire him on June 3rd 2016 to teach ATOC 1050 in the Fall of 2016.

69. Plaintiff is qualified to teach ATOC 1050 and ATOC 1060.

70. Soon after Plaintiff starts his teaching assignment in August 2016 it become clear to Plaintiff that he was assigned to teach that class only to be subjected to an extremely hostile work environment. Cora Randall and Melissa Nigro engaged in a proactive campaign to undermine Plaintiff's teaching activities as a lecturer.

71. Within the first 10 days of the semester start (August 22, 2016), Plaintiff's assigned Teaching Assistant (TA) Garret Rue was surprised to see Melissa Nigro walk into his office, and shocked when she asked him to provide her with information about Plaintiff's class. His response was a categorical "No" and that it was out of line to try to recruit him to be an informant. Melissa Nigro did not communicate in any other way with Garret Rue prior to her showing up unannounced in his office to avoid leaving a track of her contacting him. In fact Melissa Nigro has absolutely no professional or personal reason to contact Garrett Rue. He was flabbergasted that he was being recruited in a plot to undermine a colleague. In his own words: "she wanted me to be a snitch."

72. I reported this to the OEIC on March 6, 2017 when I met with investigator Tashana Taylor. UCB failed to take any action to redress Melissa Nigro's conduct.

73. On August 31, 2016, in the second week of classes, Cora Randall summoned

Plaintiff to an emergency meeting in her office because she "heard some concerns about [Plaintiff's] class". At that point in time Cora Randall only received an email from a single student among 320 students. Instead of directing the student to discuss with Plaintiff her concerns, they were taken at face value and Cora Randall considered the situation critical and needed to be addressed immediately. As an example of the "issues" that needed to be addressed in the urgent meeting: the student was upset that Plaintiff did not answer one of her questions to her satisfaction.

74. Melissa Nigro, as part of a concocted scheme to undermine Plaintiff's work, started before the beginning of classes to tell Plaintiff exactly how he should interact and use his assigned learning assistants (LAs, undergraduate students assigned to a teacher to help with their teaching activities) and how he should conduct his lectures. Plaintiff responded that she should not attempt to micromanage his work. An example of the "issues" that Melissa Nigro used to start to forcefully interfere with Plaintiff's work is: "The LAs would really like to meet with you on a regular bases". Melissa Nigro raised this issue just after the first week.

75. Another example of Melissa Nigro using bogus pretexts to invent issues is when she contacted Plaintiff on Oct 7, 2016 to let him know that "One of your LAs has contacted me with concerns about the fact that he/she will be grading student assignments. The LA program has strict rules against LAs grading student assignments". When Plaintiff asked "Could you send me the rules that the LA program has ?" Melissa Nigro's response was: "I am not sure that the LA Program has published a set of rules." On the same day, Melissa Nigro, the coordinator of the LA program, asks the Plaintiff to follow strict LA program rules and when he asks to be provided the set of rules that he needs to follow he is

told that the LA program does not have a published set of rules. Plaintiff is put in a catch-22 situation.

76. Melissa Nigro held frequent meetings with the LAs that Plaintiff was not aware of and excluded from. At those meetings she encouraged them to provide her with information about Plaintiff's class and address any comments and criticisms to her instead of Plaintiff. Using her position as LA coordinator, Melissa Nigro completely undermined the supervisory authority that Plaintiff is supposed to have with his assigned LAs.

77. In the second week, Cora Randall sat in one of the Plaintiff's lectures and subsequently reviewed all aspects of his class including the website, lecture materials, tests, assignments and other materials. Her written review did not mention any major shortcomings.

78. Throughout the entire semester, only 2 students among 320 students have expressed dissatisfaction to Cora Randall about Plaintiff's class. On October 10, 2016, Cora Randall sends an email to Melissa Nigro and John Cassano saying that one of the 2 students "said that Youssef has improved the class tremendously since the beginning of the term."

79. In a class of 320 students, some are bound to have difficulty with the material, some will inevitably be unhappy with their grade and some will be unsatisfied with strict deadlines and other rules and constraints that are necessary for a fair and good learning environment. Some students will inevitably fail the class. It is absurd to expect that all students should be satisfied with the class.

80. To take the only two complaints received from only two students among 320 students at face value and base Plaintiff's entire performance on these two students is abusive and contrary to any common sense.

81. On October 11, 2016, John Cassano decides to never hire Plaintiff again. He communicated that decision to Cora Randall and Melissa Nigro.

82. John Cassano based that decision on the complaints of only 2 students among a total of 320 students.

83. Plaintiff was not informed of the decision to never hire him in the future.

84. John Cassano sat-in on one of the Plaintiff's lectures on November 3, 2016 and subsequently reviewed all aspects of his class including the website, lecture materials, tests, assignments and other materials. His written review did not mention any shortcomings. John Cassano comprehensive review took place after he decided to never hire Plaintiff again.

85. After John Cassano sat-in on one of Plaintiff's lectures and reviewed his class material he sent an email saying: "Thanks Youssef. I enjoyed your class yesterday."

86. On November 8, 2016, Plaintiff met with John Cassano in his office to discuss his class after John Cassano finished reviewing it. This exchange, which took place after he decided to never hire Plaintiff again, was part of their conversation:

Plaintiff: "So you don't feel like you made a mistake when you hired me last summer?"

John Cassano: "I don't… No"

Plaintiff: "I didn't want to embarrass you"

John Cassano: "No… No… Not at all, I actually enjoyed your class quiet a bit… I am happy with the decision to have hired you."

87. During the same conversation this exchange between Plaintiff and John Cassano occurred:

Plaintiff: "When you're reviewing for a colleague that you're gonna be seeing for years, you can't say everything that you actually think…"

John Cassano: "I suppose… I'm pretty blunt about saying what I think. I think most of us appreciate getting a peers feedback on the class… Most of us in the Department do appreciate getting that honest feedback."

88. Plaintiff never got an honest feedback on what John Cassano actually thinks about him.

89. Although John Cassano has already made the decision to not hire Plaintiff in the future, he promised him to keep him informed of any upcoming teaching vacancies.

90. Instead of being open with Plaintiff, he was kept in the dark about all the fabricated "issues" that Cora Randall, John Cassano and Melissa Nigro were discussing between them.

91. ATOC had an open teaching position during the fall of 2016 for the class of ATOC 1050 in the spring of 2017.

92. Giuliana Turi was informed of the open position to teach ATOC 1050 in the spring of 2017.

93. Giuliana Turi was invited to apply to the open position to teach ATOC 1050 in the spring of 2017.

94. Giuliana Turi was hired to teach ATOC 1050 in the spring of 2017.

95. Jason McLeif was not informed of the open teaching position during the fall semester of 2016.

96. John Cassano learned that Jason McLeif and Plaintiff are the same person prior to the Fall of 2016.

97. Giuliana Turi was less qualified than Plaintiff at the time of her hiring to teach ATOC 1050 in the spring of 2017.

98. John Cassano decided not to hire Plaintiff for the open position to teach ATOC 1050 on or before October 11, 2016.

99. Plaintiff was not considered or hired because of his racial and national origins and as a retaliation for his repeated complaints about intentional unlawful discrimination against him.

100. Plaintiff permanently lost his employment at UCB on December 31, 2016.

101. Plaintiff was terminated from his employment at UCB because of his race and national origin and as a retaliation to his opposition to discriminating behavior towards him.

102. Lang Farmer, Associate Dean of the College of Arts & Sciences, whom Plaintiff met on June 1, 2017 to discuss the situation and express his dissatisfaction with the Defendants, acknowledged that it is not normal to scrutinize an instructor within the first two weeks over minor comments from students. He also labeled "very fishy" the fact that ATOC failed to inform Plaintiff of teaching positions numerous times while they always informed Jason McLeif. When asked by Lang Farmer what Plaintiff thought could be the solution, Plaintiff answered: "At the very least they should advertise their open positions online and stop keeping them a secret."

103. John Cassano continued after that to inform only who he chooses of any open teaching positions. UCB has taken absolutely no step to redress the blatant discriminatory practices that Plaintiff was subjected to.

104. On Feb 14, 2017 Plaintiff contacted Cora Randall to express his dissatisfaction with the way he was treated. He also informed her that he "not only considers this kind of conduct unethical but also discriminatory."

105. Cora Randall responded two days later to Plaintiff that "there has been no

unethical or discriminatory conduct. "

106. As a responsible employee, Cora Randall "is required to promptly report to the Office of Institutional Equity and Compliance (OIEC) all known details about the alleged discrimination, harassment, or retaliation." (Quoted from UCB's Discrimination and Harassment Policy and Procedures).

107. Instead of reporting Plaintiff's complaint, Cora Randall chose to make a determination on her own that there was no discriminatory conduct.

108. Cora Randall is well aware of her obligation to "promptly report to the Office of Institutional Equity and Compliance (OIEC) all known details about the alleged discrimination, harassment, or retaliation."

109. On Feb 28, 2017, two weeks after Plaintiff informed Cora Randall that he considers the way he was treated in her Department discriminatory, he contacts her again to remind her that: "you are also required, as a responsible employee, to promptly report my concerns to the Office of Institutional Equity and Compliance."

110. On Feb 28, 2017, Plaintiff informs OIEC by forwarding the entire chain of emails he exchanged with Cora Randall since Feb 14, 2017 to Valerie Simons, the Associate Vice Chancellor of OIEC.

111. On March 1, 2017, Tashana Taylor, an investigator with the OIEC contacted Plaintiff and offered to meet him.

112. On March 2, 2017, more than two weeks after Plaintiff complained to Cora Randall of ATOC's discriminatory practices, two days after Plaintiff filed his complaint with the OIEC and after he reminded Cora Randall that she failed to report his complaint per UCB's policy, and after he has been exchanging information with OIEC's investigator

Tashana Taylor, Cora Randall contacts Plaintiff to inform him that she finally contacted the OIEC regarding his complaint.

113. Cora Randall failed to “promptly report to the Office of Institutional Equity and Compliance (OIEC) all known details about the alleged discrimination”. Cora Randall failed to adhere to UCB's Discrimination and Harassment Policy and Procedures.

114. John Cassano stated to investigator Tashana Taylor that the reason he never informed Plaintiff of open teaching positions while he always informed Jason Mcleif is: “he filed their email addresses under different directories...”

115. Defendants provided the following documented reasons as to why Plaintiff was excluded from the open teaching positions at ATOC: (1) John Cassano filed Plaintiff's email address under a different directory from other candidates (2) John Cassano was in the later stages of the hiring process (3) John Cassano (and ATOC) was not familiar with Plaintiff but was familiar with other candidates (4) John Cassano was not familiar with the institution from which Plaintiff obtained his degree (5) John Cassano was not familiar with the institution where Plaintiff worked (6) John Cassano has considerable familiarity and holds in high regard the Department where other candidates worked (7) John Cassano placed more weight on another candidate's position (postdoctoral researcher) than Plaintiff's position (Research Associate) (8) Plaintiff's research experience aligned less with ATOC research focus than other candidates' research experience.

116. Defendants used shifting hiring criteria for the exact same job: teach ATOC 1050 or ATOC 1060, to justify excluding Plaintiff from teaching vacancies.

117. Defendants falsified, manipulated and used non-existent hiring criteria to provide a false pretext for not hiring Defendant.

118. Defendants falsified, manipulated and used non-existent hiring criteria and excuses to provide a false pretext for the adverse treatment that Plaintiff was subjected to.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Denial of Equal Protection Under the Law

### Pursuant to 42 U.S.C. § 1983

### (Against Defendants UCB Board of Regents and DiStefano, Forbes and Nigro in their Official Capacities, and against Defendants Cassano and Randall in their Official and Individual Capacities)

119. Plaintiff hereby incorporates paragraphs 1 through 118 above as though fully set forth herein.

120. Plaintiff Youssef Moudden is a member of a protected class based upon his race and national origin, pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

121. Defendants denied Plaintiff Youssef Moudden his constitutionally-protected rights, under color of state law, when they acted intentionally and recklessly to exclude Plaintiff from the positions of Instructor and Lecturer and to terminate his employment as hereinabove described.

122. Defendants' practices relied upon improper classifications based on race and national origin.

123. Defendants' discrimination against Plaintiff Youssef Moudden was not necessary to further either a compelling governmental interest or rationally related to

any legitimate government interest.

124. The aforementioned conduct represents the official custom, policy or practice of Defendants. Defendants Cassano, Randall, Forbes and Nigro's conduct violated the established rights of Plaintiff Youssef Moudden, of which reasonable persons in their positions should have known.

125. Defendants Cassano, Randall, Forbes and Nigro's conduct was engaged in maliciously or with reckless or callous disregard to Plaintiff Youssef Moudden's protected rights and feelings.

126. Defendants received actual and constructive notice of a pattern of constitutional violations, had the power to prevent or mitigate such illegal conduct, demonstrated deliberate indifference to and tacit authorization of the acts, and failed to take sufficient remedial action. As a result of Defendants' misconduct herein, Plaintiff Youssef Moudden suffered injury and damage to his person and his property on account of his race and national origin.

## SECOND CLAIM FOR RELIEF

### Breach of Contract

### (Against Defendant Board of Regents and DiStefano, Cassano, Randall, Forbes and Nigro in their Official Capacities)

127. Plaintiff hereby incorporates paragraphs 1 through 126 as though fully alleged herein.

128. Plaintiff Moudden and the Regents entered into a contract for employment.

129. Plaintiff's contract for employment guarantees him the right not to

be discriminated against on the basis of his race and national origin and not to be retaliated against for making complaints of discrimination.

130. Plaintiff Moudden opposed illegal discrimination.

131. Defendant Regents breached the contract with Plaintiff by discriminating against him because of his race and national origin and by retaliating against him for opposing discrimination.

132. As a result of Defendants' discrimination and retaliation, Plaintiff Moudden has been damaged.

WHEREFORE, Plaintiff Youssef Moudden respectfully requests that this Court enter judgment in his favor and against Defendants and award him the following:

(a) injunctive and declaratory relief, including a declaration that the Defendants' actions toward Plaintiff were unconstitutional and unlawful and an injunction preventing Defendants from continuing their unconstitutional and unlawful conduct;

(b) prospective relief on all claims so limited;

(c) where allowed, damages in such an amount as shall be proven at trial for back-pay, lost benefits, lost wages, lost promotions, lost tenure, lost seniority and other employment opportunities;

(d) compensatory damages, including for emotional distress and humiliation, as allowed by law;

(e) punitive or exemplary damages on Plaintiff's Claim for Denial of Equal Protection as against the individually-named Defendants;

(f) all fees and costs as allowed by law; and

(g) pre- and post-judgment interest, costs and expert witness fees and such other relief as the Court deems just and proper.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL OF HIS CLAIMS.

Respectfully submitted this 1st day of October, 2018

Youssef Moudden
1225 Linden Ave APT 3
Boulder, CO 80304
(720) 290-8272
youssefmoudden@gmail.com