**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 18-cv-2514-WJM-SKC

YOUSSEF MOUDDEN, an individual,

      Plaintiff,

v.

THE UNIVERSITY OF COLORADO BOULDER,
through its Board, THE REGENTS OF THE
UNIVERSITY OF COLORADO, a body corporate,
PHILIP DISTEFANO, in his official capacity,
JEFFREY FORBES, in his official capacity,
JOHN CASSANO, in his official and individual capacities,
CORA RANDALL, in her official and individual capacities,
MELISSA NIGRO, in her official capacity,

      Defendants.

---

**ORDER ADOPTING IN PART AND REJECTING IN PART SEPTEMBER 4, 2019**
**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

      This matter is before the Court on the September 4, 2019 Recommendation by

U.S. Magistrate Judge S. Kato Crews (the "Recommendation") (ECF No. 62) that the

above-captioned Defendants' Motion to Dismiss Plaintiff Youssef Moudden's ("Plaintiff"

or "Moudden") Amended Complaint and Jury Demand (the "Motion to Dismiss") (ECF

No. 19) and Defendants' Early Motion for Partial Summary Judgment (the "Motion for

Summary Judgment") (ECF No. 32) be granted.  The Recommendation is incorporated

herein by reference.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).  For the

reasons set forth below, the Recommendation is adopted in part, and rejected in part.

# I. BACKGROUND

On December 11, 2018, Plaintiff filed the operative Amended Complaint and Jury Demand. (ECF No. 13.) Plaintiff's allegations, which the Court accepts as true only for purposes of the Motion to Dismiss, are as follows:

Plaintiff is a former Research Associate and Lecturer in the Departments of Aerospace Engineering Sciences ("AES") and Atmospheric and Oceanic Studies ("ATOC") for Defendant University of Colorado Boulder (the "University"). (*Id.* at 1.) He identifies as black and African-American, and his national origin is Moroccan.[1] Plaintiff worked at the University from June or July 2007 to the end of the Fall 2016 semester. (*Id.* at 1.)

At some point while working as a Research Assistant for AES, Plaintiff became interested in becoming a lecturer in ATOC. (*Id.* at 4.) At all relevant times, Defendant John Cassano ("Cassano") was responsible for selecting candidates for teaching positions in ATOC, subject to the approval of the chair of ATOC, Defendant Cora Randall ("Randall"). (*Id.* at 4.) Cassano and Randall first became aware of Plaintiff's desire to lecture in ATOC on June 11, 2013, when Plaintiff expressed interest in a lecturing vacancy. (*Id.* at 4.) They did not consider Plaintiff for the position. (*Id.* at 4.)

Cassano and Randall were again made aware of Plaintiff's interest in a Lecturer

---

[1] Plaintiff does not allege his race or national origin in the Amended Complaint. (*See* ECF No. 13.) However, the Amended Complaint references the Charge of Discrimination he filed with the Equal Employment Opportunity Commission ("EEOC"), which identifies his race and national origin as indicated above. The Court may consider central, undisputed documents referenced in the Amended Complaint without converting Defendants' Motion to Dismiss into a motion for summary judgment. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Accordingly, the Court will treat the Amended Complaint as having alleged Plaintiff's race and national origin.

position in ATOC in April 2014, when he applied to teach the courses ATOC 1050 and 1060. (*Id.* at 4–5.) According to Plaintiff, Defendants ultimately hired a "less qualified candidate" with "inferior teaching experience and inferior research experience." (*Id.* at 5.)

In August 2014, Plaintiff e-mailed Cassano from a different e-mail address under the pseudonym "Jason McLeif." (*Id.* at 5.) Plaintiff, posing as "McLeif," stated in an e-mail to Cassano that he was a post-doctoral student at Colorado State University and was inquiring about lecturer vacancies in ATOC. (*Id.* at 5.) Cassano responded and informed "McLeif" (*i.e.*, Plaintiff) that there were currently no vacancies, but that he would keep him apprised of future opportunities. (*Id.*) Thereafter, Cassano informed "McLeif" of "every teaching vacancy that ATOC had and invited him to apply at every available occasion." (*Id.*) Cassano never informed Plaintiff (*i.e.*, Youssef Moudden) of any teaching vacancy and never invited him to apply. (*Id.*)

Plaintiff subsequently applied and was rejected for an ATOC lecturer position in May 2015, October 2015, and May 2016. (*Id.* at 6–8.) At various times, Plaintiff told his supervisor Defendant Jeffrey Forbes ("Forbes") that the University was refusing to consider him for the positions to which he applied, while it continued to consider "McLeif." (*Id.* at 10.) Plaintiff eventually expressed to Forbes his suspicion of racial discrimination on the part of the University. (*Id.* at 10–11.) "Forbes['] responses were extremely derogatory. At different times, his responses were: '[Y]ou need to stop whining,' '[Y]ou are a menace,' [and] 'if war breaks I think you'll be fighting for the other side.'" (*Id.* at 11.)

After Plaintiff again complained to Forbes in May 2016, Forbes stated to Plaintiff, "I think [Cassano] will be voting for Trump!" (*Id.* at 11.) Forbes then told other ATOC personnel that "McLeif" and Plaintiff were the same individual. (*Id.* at 12.) Forbes did not report Plaintiff's complaints to the University's Office of Institutional Equity and Compliance ("OIEC") as required by the University's Discrimination and Harassment Policy and Procedures. (*Id.* at 12.) Plaintiff alleges that Cassano and Randall subsequently "decide[d] on a devious plot to correct the situation to their advantage," and immediately hired Plaintiff to teach ATOC 1050 for the Fall 2016 semester. (*Id.* at 12.)

Shortly after the Fall 2016 semester began, "it became clear to Plaintiff that he was assigned to teach [ATOC 1050] only to be subjected to an extremely hostile work environment." (*Id.* at 13.) On August 22, 2016, Defendant Melissa Nigro ("Nigro") asked Plaintiff's teaching assistant, Garrett Rue, to provide her with information about Plaintiff's class. (*Id.* at 13.) Plaintiff reported this incident to the OIEC in March 2017. (*Id.* at 13.)

On August 31, during the second week of classes, Randall summoned Plaintiff to her office and told him she had "heard some concerns about [Plaintiff's] class." (*Id.* at 13–14.) One student, out of 320, had expressed to Randall that Plaintiff had not answered a question of hers to her satisfaction. (*Id.* at 14.)

Defendant Nigro began to instruct Plaintiff, shortly before class periods would begin, "how he should conduct his lectures." (*Id.* at 14.) Nigro also contacted Plaintiff on October 7, 2016 to tell him that one of his "learning assistants" ("LAs,"

undergraduate students who assist a lecturer) was concerned that Plaintiff had instructed the LA to grade other students' assignments.  (*Id.* at 14.)  Nigro told Plaintiff that the University "has strict rules against LAs grading student assignments," but subsequently admitted that the LA program had no published set of rules.  (*Id.* at 14.)  Unbeknownst to Plaintiff at the time, Nigro also held frequent meetings with the LAs, where she requested that they provide comments about and criticisms of Plaintiff's class.  (*Id.* at 15.)

In the fall of 2016, ATOC sought a lecturer for the Spring 2017 ATOC 1050 course.  (*Id.* at 17.)  Plaintiff communicated to Randall his interest in the position on August 31, 2016, but Defendants instead hired Giuliana Turi who, according to Plaintiff, at the time was less qualified for the position than he was.  (*Id.* at 17–18.)

Plaintiff met with Lang Farmer, the University's Associate Dean of the College of Arts & Sciences, on June 1, 2017, to discuss his concerns about the above-detailed events.  (*Id.* at 18.)  Lang "acknowledged that it is not normal to scrutinize an instructor within the first two weeks over minor comments from students."  (*Id.* at 18.)  Lang "also labeled 'very fishy' the fact that ATOC failed to inform Plaintiff of teaching positions numerous times while they always informed Jason McLeif."  (*Id.* at 18.)

Plaintiff, alleging that Defendants discriminated against him on account of his race and/or national origin, filed his Amended Complaint and Jury Demand with the Court on December 11, 2018.  (*Id.*)  Plaintiff brings claims under Title VII, 42 U.S.C. § 2000e *et seq*. ("Title VII"), equal protection claims under 42 U.S.C. § 1983, as well as a claim under the Colorado Anti-Discrimination Act ("CADA"), and a breach of contract

claim.  (*Id.* at 21–26.)

Defendants on December 26, 2018, filed a Motion to Dismiss Plaintiff's Amended Complaint and Jury Demand.  (ECF No. 19.)  Plaintiff filed a Response on January 7, 2019 (ECF No. 22), and Defendants on January 23, 2019 filed a Reply (ECF No. 29).

On February 7, 2019, Defendants filed a Motion for Partial Summary Judgment. (ECF No. 32.)  Plaintiff filed a Response on February 26, 2019 (ECF No. 33), and Defendants on March 13, 2019 filed a Reply (ECF No. 35).

On September 4, 2019, U.S. Magistrate Judge S. Kato Crews issued a Recommendation, recommending that Defendants' Motions be granted.  (ECF No. 62.) Plaintiff filed a timely Objection to the Recommendation (ECF No. 68), and Defendants filed a Response (ECF No. 70).

## II.  STANDARDS OF REVIEW

A.    Review of a Magistrate Judge's Recommendation

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district court "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*.

B.    Rule 56 Motion for Summary Judgment

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc*., 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

C.       Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of

7

those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting

*Twombly*, 550 U.S. at 556).

D.      Review of a *Pro Se* Plaintiff's Pleadings

The Court must construe a *pro se* plaintiff's pleadings and filings "liberally"—that

is, "to a less stringent standard than formal pleadings filed by lawyers." *Smith v. United*

*States*, 561 F.3d 1090, 1096 (10th Cir. 2009).  It is not, however, "the proper function of

the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also*

*Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) ("[W]e will not supply additional

facts, nor will we construct a legal theory for plaintiff that assumes facts that have not

been pleaded.").

## III.  ANALYSIS

A.      **Defendants' Motion for Summary Judgment**

1.      Plaintiff's Title VII Claims

As state previously, Plaintiff brings claims against Defendants under Title VII.

(ECF No. 13 at 21–22.)  The Magistrate Judge concluded that Defendants are entitled

to summary judgment with respect to these claims because the undisputed facts show

that Plaintiff failed to exhaust his administrative remedies.  (ECF No. 62 at 29–34.)

Plaintiff filed a timely and specific objection to this portion of the Recommendation.

Accordingly, the Court will review this portion of the Recommendation *de novo*.  Fed. R.

Civ. P. 72(b)(3); *Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir. 1996).

a.      *"Charge of Discrimination"*

Title VII requires a claimant, before filing a federal lawsuit, to exhaust his or her

administrative remedies by filing a timely charge of discrimination with the EEOC. *Id.* §
2000e-5(e)(1). A charge of discrimination must be filed within 300 days "after the
alleged unlawful employment practice occurred." *Id.* Plaintiff argues that his EEOC
Intake Questionnaire (the "Questionnaire"), filed on June 8, 2017, constitutes a
"charge." (ECF No. 68 at 9.) Defendants in their Motion for Summary Judgment
disagreed, and argued that Plaintiff's "Charge of Discrimination" filed with the EEOC on
October 12, 2017 constitutes the "charge," and therefore, that any Title VII claim
accruing more than 300 days before October 12, 2017 is time-barred. The Magistrate
Judge agreed with Defendants on this point, and because each discriminatory event
alleged by Plaintiff occurred more than 300 days before October 12, 2017, granted
summary judgment to Defendants on all of Plaintiff's Title VII claims.

However, as Defendants point out in their Response to Plaintiff's Objections to
the Recommendation (ECF No. 70 at 10), only the first page of Plaintiff's Questionnaire
was before the Magistrate Judge at the time of his Recommendation. (*See* ECF No. 33
at 16.) Plaintiff attaches what appears to be the full Questionnaire document with his
Objections to the Recommendation of the Magistrate Judge (ECF No. 68 at 14–17),
and Defendants in their Response to Plaintiff's Objections now concede that the
Questionnaire does constitute a "charge of discrimination" (ECF No. 70 at 10).

Given the parties' agreement that the June 8, 2017 Questionnaire constitutes a
charge, any of Plaintiff's Title VII failure-to-hire claims that accrued more than 300 days
before June 8, 2017 (*i.e.*, on or before August 12, 2016) are time-barred. As such,
Plaintiff's claim arising out of Defendants' alleged failure to hire him for the Spring 2017
ATOC 1050 course is not time-barred.

9

Because the Recommendation advised that Defendant's Motion for Summary Judgment be granted as to all of Plaintiff's Title VII claims, Plaintiff's objection to this portion of the Recommendation is sustained, and the Recommendation as to these claims is adopted in part as modified, and rejected in part. Defendants' Motion for Summary Judgment is granted with respect to all Title VII failure to hire claims, except for the claim arising out of Defendants' alleged failure to hire Plaintiff as a lecturer for the Spring 2017 ATOC 1050 course.

b.    *Retaliation & Hostile Work-Environment Claims*

Plaintiff also seeks to bring retaliation and hostile work environment claims against Defendants under Title VII. (ECF No. 13 at 21–22). Plaintiff alleges a series of events that occurred after he was hired as a Lecturer for ATOC 1050, and also after August 12, 2016, that he asserts gives rise to such claims. (*Id.* at 12–18.) Defendants argue that, because Plaintiff's charge of discrimination filed with the EEOC does not "contain facts concerning the discriminatory and retaliatory actions underling [these] claim[s]," *Smith v. Cheyenne Retirement Investors L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018), Plaintiff has not exhausted his administrative remedies with respect to these claims. (ECF No. 32 at 10–12.)

Plaintiff's Title VII "claim[s] in federal court [are] generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (internal citation omitted). The Court must "liberally construe charges filed with the EEOC in determining whether administrative remedies have been

exhausted as to a particular claim." *Id*. (internal citation omitted).

(1)    Plaintiff's Retaliation Claim

As Defendants point out (ECF No. 32 at 12), Plaintiff did not check the box denoted "Retaliation" in his charge of discrimination filed with the EEOC (ECF No. 32-3 at 7). "The failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box." *Jones*, 502 F.3d at 1186. "The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim." *Id*.

Because Plaintiff did not mark the "Retaliation" box, he presumptively was not asserting retaliation claims in his charge of discrimination. *Id*. The text of the charge is as follows: "I have been repeatedly denied lecturer positions despite being qualified since April 2015 and most recently in October 2016. I believe I have been discriminated against because of my race (Black/African American) and national origin (Moroccan) in violation of Title VII of the Civil Rights Act of 1964, as amended." (ECF No. 32-3 at 7.)

The Court concludes that the text of Plaintiff's charge is insufficient as a matter of law to rebut the presumption that Plaintiff was not asserting retaliation charges in his charge of discrimination. On the face of the charge, Plaintiff appears to only be asserting failure-to-hire claims, and because of this, the EEOC could not reasonably have been expected to investigate unlawful retaliation on the part of Defendants. As a consequence, the Court agrees with the Magistrate Judge and finds that Plaintiff has failed to administratively exhaust his retaliation claim. For this reason, Plaintiff's objection to this portion of the Recommendation is overruled. The portion of the

Magistrate Judge's Recommendation recommending that Defendants' Motion for Summary Judgment be granted with respect to this claim is adopted.  Defendants' Motion for Summary Judgment (ECF No. 32) is granted with respect to Plaintiff's retaliation claim brought under Title VII.

(2)    Plaintiff's Hostile Work Environment Claim

The Court similarly concludes that, given the charge of discrimination Plaintiff filed with the EEOC (ECF No. 32-3), an administrative investigation of hostile work-environment claims cannot "reasonably expected to follow the charge."  *Jones*, 502 F.3d at 1187.

The text of Plaintiff's charge states only that he was "repeatedly denied lecturer positions," and that he believes he was discriminated against on the basis of his race and/or national origin.  (ECF No. 32-3 at 7.)  On the face of the charge, it is unclear he had ever been employed by the University at all.  The EEOC accordingly could not reasonably have been expected to investigate whether Plaintiff had been subjected to a hostile work environment at an employer for whom he never worked.  As such, Plaintiff has failed to exhaust this claim.

Plaintiff's objection to this portion of the Recommendation is overruled, and he portion of the Recommendation recommending that Defendants be granted summary judgment on this claim is adopted.  Defendants' Motion for Summary Judgment is granted as to Plaintiff's Title VII hostile work-environment claim.

3.    <u>Plaintiff's Equal Protection / § 1983 Claims</u>

Plaintiff brings § 1983 claims against Defendants, alleging that they violated his rights under the Equal Protection Clause.  The Magistrate Judge recommended that, on

the basis of the applicable statute of limitations, Defendants be granted summary judgment as to Plaintiff's § 1983 claims that accrued on or before October 2, 2016. Plaintiff did not object to this portion of the Recommendation. Finding no clear error, this portion of the Recommendation is adopted. Defendants' Motion for Summary Judgment is granted with respect to Plaintiff's § 1983 claims that accrued on or before October 2, 2016. *See* Fed R. Civ. P. 72.

**B.    Defendants' Motion to Dismiss**

Defendants seek to dismiss under Federal Rule of Civil Procedure 12(b)(6) Plaintiff's claims against which summary judgment has not been granted. These claims are (1) Plaintiff's Title VII failure-to-hire claim, arising out of Defendants' failure to hire Plaintiff as a lecturer for the Spring 2017 ATOC course; (2) Plaintiff's § 1983 failure-to-hire claim that arises from the same event; and (3) Plaintiff's state law claims.

1.    <u>Plaintiff's Title VII Claim</u>

Defendants argue that, with respect to Plaintiff's failure-to-hire claim brought under Title VII, he has failed to plausibly state a claim for relief. (ECF No. 19 at 8–11.) The Magistrate Judge agreed, and recommended that these claims be dismissed without prejudice. (ECF No. 62 at 14–16, 35.) Plaintiff filed a timely and specific objection to this portion of the Recommendation, and as such, the Court will review it *de novo*. Fed. R. Civ. P. 72(b)(3); *Soliz*, 82 F.3d at 375.

Under *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1972), Plaintiff would bear at trial the initial burden of establishing a prima facie case of racial discrimination. Plaintiff can satisfy this burden by showing the following: "(i) that he

belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of [Plaintiff's] qualifications." *Id*.[2]

The Magistrate Judge concluded that Plaintiff failed to allege facts that plausibly establish the fourth element of the *McDonnell Douglas* framework outlined above, because "[f]or each position [Plaintiff] applied for, the Amended Complaint alleges the University filled the position at the time it rejected [Plaintiff]—*i.e.*, it does not allege the University continued to seek applicants after rejecting him." (ECF No. 62 at 14–15.) The Magistrate Judge accordingly recommended that Plaintiff's Title VII claim be dismissed without prejudice. For the reasons set forth below, the Court rejects this portion of the Recommendation.

While the *McDonnell Douglas* framework is not formally a pleading standard, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002), it guides the Court in determining whether Plaintiff has plausibly alleged a Title VII failure-to-hire claim. *See Messina v. Kroblin Transp. Sys., Inc.*, 903 F.2d 1306, 1308 (10th Cir. 1990) ("The *McDonnell Douglas* inferences provide assistance to a judge as he addresses motions to dismiss[.]"); *Morman v. Campbell Cnty. Memorial Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015) (unpublished) ("[T]o evaluate whether [the] complaint survives a motion to dismiss, absent direct evidence of discrimination, we examine the first step of the

---

[2] In *McDonnell Douglas*, 411 U.S. at 802 n.13, the Supreme Court noted that "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."

*McDonnell Douglas* framework[.]")  The Court concludes that Plaintiff has plausibly alleged the four *McDonnell Douglas* elements, and as such, that he has plausibly alleged a Title VII failure to hire claim.

Discussing *McDonnell Douglas* in the context of Title VII, the Tenth Circuit has stated that "when a qualified employee, who is a member of a racial minority group that has traditionally suffered workplace discrimination, is not hired for a job in which a vacancy exists, *the failure to hire alone is sufficient to raise the inference of discrimination*."  *Perry v. Woodward*, 199 F.3d 1126, 1139 (10th Cir. 1999) (emphasis added) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977)). And in *Teamsters*, the Supreme Court stated as follows with respect to the *McDonnell Douglas*:

> Although the *McDonnell Douglas* formula does not require direct proof of discrimination, it does demand that the alleged discriminatee demonstrate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.  *Elimination of these reasons for the refusal to hire is sufficient, absent other explanation, to create an inference that the decision was a discriminatory one*.

*Teamsters*, 431 U.S. at 358 n.44 (emphasis added).

In the Court's view, in light of these authorities, the fourth *McDonnell Douglas* element does not turn so sharply on whether the University literally continues to seek new applicants after rejecting Plaintiff, as compared to contemporaneously selecting someone who has already applied for the position denied Plaintiff.  In other words, the fourth element of the *McDonnell Douglas* formula, in the failure to hire context, is best

understood as ensuring that a plaintiff establish (1) that a qualifying job vacancy was actually available at the time he applied, and (2) that the University ultimately "d[id] not eliminate the position for which [Plaintiff] was rejected." *Perry*, 199 F.3d at 1140. This is so because, by establishing the four *McDonnell Douglas* elements, Plaintiff would facially eliminate "the two most common legitimate reasons on which [Defendants] might rely to reject [Plaintiff]: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought," and thereby "create an inference that the [hiring] decision was a discriminatory one." *Teamsters*, 431 U.S. at 358 n.44.

Plaintiff alleges (1) that he is black and of Moroccan descent, *see supra* note 1; (2) facts that plausibly establish he was qualified to be a lecturer for the course ATOC 1050 in Spring 2016 (*see, e.g.*, ECF No. 13 at 12–13); (3) that he was not hired by Defendants (*id.* at 17–18); and (4) that "Giuliana Turi was hired to teach ATOC 1050 in the spring of 2017" (*id.* at 17). Accordingly, a plausible inference can be made that Defendants violated Title VII in failing to hire him as a lecturer for the Spring 2017 ATOC 1050 course. Plaintiff's objection to the portion of the Recommendation advising that this claim be dismissed without prejudice is therefore sustained, and this portion of the Recommendation is rejected. Plaintiff's Title VII failuretohire claim, arising from Defendants' failure to hire him as a lecturer for the Spring 2017 ATOC 1050 course, remains pending.

    2.    <u>Plaintiff's § 1983 Claims</u>

        a.    *Party Defendants*

The Magistrate Judge recommended that Plaintiff's remaining § 1983 claim be

dismissed as to Defendants Forbes, Randall, Cassano, and Nigro in their official capacities.  (ECF No. 62 at 25.)  The Court concludes that, even in light of Plaintiff's *pro se* status, Plaintiff did not properly object to this portion of the Recommendation.  *See Smith*, 561 F.3d at 1096.  As such, finding no clear error, the Court adopts this portion of the Recommendation.  *See* Fed. R. Civ. P. 72.

      b.    *Merits*

Defendants seek to have Plaintiff's remaining § 1983 claim, an equal-protection claim arising from the failure to hire Plaintiff for the Spring 2017 ATOC 1050 lecturer position, dismissed under Federal Rule of Civil Procedure 12(b)(6).  The Magistrate Judge recommended that this claims be dismissed without prejudice.  (ECF No. 62 at 35.)  Plaintiff filed a timely and specific objection to this portion of the Recommendation, and as such, the Court will review this portion of the Recommendation *de novo*.  *See* Fed. R. Civ. P. 72(b)(3).

Plaintiff alleges that "Defendants denied Plaintiff . . . his constitutionally protected rights, under color of state law, when they acted intentionally and recklessly to exclude Plaintiff from the positions of Instructor and Lecturer and to terminate his employment." (ECF No. 13 at 23–24.)  Even in light of Plaintiff's *pro se* status, *see Smith*, 561 F.3d 1096, the Court reads these allegations as alleging an equal protection violation only with respect to Defendants' failure to hire Plaintiff for the Spring 2017 ATOC 1050 course.

To succeed on an equal protection claim based on disparate treatment, Plaintiff must provide either direct evidence of discrimination or prevail under the burden shifting

framework of *McDonnell Douglas*. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *see also Burns v. Bd. of Cnty. Comm'rs of Jackson Cnty.*, 330 F.3d 1275, 1283 (10th Cir. 2003) ("While *McDonnell Douglas* involved a Title VII claim, its burden shifting analysis applies equally to § 1983 claims of race discrimination in violation of the Equal Protection Clause.").

While, again, the *McDonnell Douglas* framework is not formally a pleading standard, *Swierkiewicz*, 534 U.S. at 510, it guides the Court in determining whether Plaintiff has alleged a plausible claim of race discrimination, *Messina*, 903 F.2d at 1308. Thus, for the same reasons as discussed above with respect to Plaintiff's Title VII claim, the Court concludes that Plaintiff has plausibly alleged that Defendants violated his rights under the Equal Protection Clause with respect to the Spring 2017 ATOC 1050 course.

  3. <u>Plaintiff's State Law Claims</u>

    a. *Colorado Anti-Discrimination Act*

Plaintiff brings a claim under the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-401 *et seq*. The Magistrate Judge recommended that these claims be dismissed with prejudice, because they are barred by the State's sovereign immunity under the Eleventh Amendment. Plaintiff did not object to this portion of the Recommendation. Finding no clear error, the Court adopts this portion of the Recommendation. *See* Fed. R. Civ. P. 72.

    b. *Breach of Contract*

Plaintiff also brings a breach of contract claim against Defendants. The

Magistrate Judge recommended that this claim be dismissed with prejudice, because it is also barred by the Eleventh Amendment. Plaintiff did not object to this portion of the Recommendation. Finding no clear error, the Court adopts this portion of the Recommendation. *See* Fed. R. Civ. P. 72.

## IV. CONCLUSION

In accordance with the foregoing, the Court ORDERS as follows:

1.  The Magistrate Judge's Recommendation (ECF No. 62) as to Defendants' Motion for Summary Judgment (ECF No. 32) is ADOPTED IN PART and REJECTED IN PART, as follows:

    a.  Plaintiff's objection to the Recommendation (ECF No. 62) is SUSTAINED as to Plaintiff's Title VII Claim arising from Defendants' alleged failure to hire Plaintiff for the Spring 2017 semester, and OVERRULED in all other respects;

    b.  The Recommendation is REJECTED as to Plaintiff's Title VII Claim arising from Defendants' alleged failure to hire Plaintiff for the Spring 2017 semester, and ADOPTED in all other respects; and

    c.  Defendants' Motion for Summary Judgment (ECF No. 32) is DENIED as to Plaintiff's Title VII Claim arising from Defendants' alleged failure to hire Plaintiff for the Spring 2017 semester, GRANTED as to all other Title VII Claims, DENIED as to Plaintiff's Equal Protection / § 1983 Claim arising out of Defendants' alleged failure to hire Plaintiff for the Spring 2017 semester, and GRANTED as to all other Equal Protection / § 1983 Claims.

2.  The Magistrate Judge's Recommendation (ECF No. 62) as to Defendants' Motion to Dismiss (ECF No. 19) is ADOPTED IN PART and REJECTED IN PART, as follows:

    a.  Plaintiff's objection to the Recommendation is SUSTAINED as to Plaintiff's Title VII Claim arising from Defendants' alleged failure to hire Plaintiff for the Spring 2017 semester, and SUSTAINED as to Plaintiff's Equal Protection / § 1983 Claim arising from Defendants' alleged failure to hire Plaintiff for the Spring 2017 semester;

    b.  The Recommendation is REJECTED as to Plaintiff's Title VII Claim arising from Defendants' alleged failure to hire Plaintiff for the Spring 2017 semester, REJECTED as to Plaintiff's Equal Protection / § 1983 Claim arising from Defendants' alleged failure to hire Plaintiff for the Spring 2017 semester, and ADOPTED in all other respects;

    c.  Defendants' Motion to Dismiss is GRANTED as to Plaintiff's Equal Protection / § 1983 Claims against Defendants Forbes, Randall, Cassano, and Nigro, GRANTED as to Plaintiff's CADA Claim and Breach of Contract Claim, and DENIED in all other respects; and

    d.  Plaintiff's Equal Protection / § 1983 Claims against Defendants Forbes, Randall, Cassano, and Nigro in their official capacities, and Plaintiff's CADA Claim and Breach of Contract Claim are DISMISSED WITH PREJUDICE.

3.  The Magistrate Judge shall set this matter for a Scheduling Conference as soon as practicable, as this matter remains pending as to Plaintiff's Title VII Claim

20

arising from Defendants' alleged failure to hire Plaintiff for the Spring 2017

semester, and Plaintiff's Equal Protection / § 1983 Claim arising from

Defendants' alleged failure to hire Plaintiff for the Spring 2017 semester.

Dated this 20th day of December, 2019.

BY THE COURT:

William J. Martinez
United States District Judge