IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-2514-WJM-SKC

YOUSSEF MOUDDEN,

    Plaintiff,

v.

THE UNIVERSITY OF COLORADO BOULDER,
through its Board, THE REGENTS OF THE
UNIVERSITY OF COLORADO, a body corporate,
PHILIP DISTEFANO, in his official capacity,
JOHN CASSANO, in his individual capacity, and
CORA RANDALL, in her individual capacity,

    Defendants.

---

## ORDER ADOPTING JANUARY 25, 2021 RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

In this race discrimination action, pro se Plaintiff Dr. Youssef Moudden sues Defendants University of Colorado, through its Board, the Regents of the University of Colorado (the "University"), Philip DiStefano, John Cassano, and Cora Randall (collectively, "Defendants") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, and for denial of equal protection pursuant to 42 U.S.C. § 1983. (¶¶ 123–31, 138–45.)[1]

---

[1] Citations to paragraph numbers, without more, e.g. (¶__), are to paragraphs in Plaintiff's Amended Complaint and Jury Demand. (ECF No. 13.)

1

This matter is before the Court on the January 25, 2021 "Recommendation re: Motion for Summary Judgment [#80]" by United States Magistrate Judge S. Cato Crews (the "Recommendation") (ECF No. 93). The recommendation recommends that Defendants' Motion for Summary Judgment (ECF No. 80) be granted and judgment be entered in favor of Defendants. The Recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

Plaintiff filed the "Objections to Recommendation RE: Motion for Summary Judgment [#93]" (ECF No. 94) on February 10, 2021. The Defendants filed the Response to Plaintiff's Objections to Magistrate Judge's Recommendation (ECF No. 96) on February 17, 2021.

For the reasons explained below, Plaintiff's objection is overruled, the Recommendation is adopted in its entirety.

## I. LEGAL STANDARDS

### A. Review of A Magistrate Judge's Recommendation

Federal Rule of Civil Procedure 72(b)(2) provides, "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Rule 72(b)(3) provides, "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." An objection must be sufficiently specific so as to enable the "district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Thomas v. Arn*, 474 U.S. 140, 147

(1985)).

**B.     Motion for Summary Judgment**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

---

[2] Because Plaintiff proceeds pro se, the Court liberally construes his pleadings.  *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

## II. BACKGROUND

**A.     Factual Allegations**[3]

In May 2016, Plaintiff—an African American male from Morocco—contacted Dr. Cassano, the Associate Chair in the University's Department of Atmospheric and Oceanic Sciences ("ATOC") who was in charge of hiring lecturers, to inquire whether there were any available teaching positions.  (ECF No. 80 at 4, ¶ 1; ECF No. 93 at 1–2.)  Dr. Cassano informed Plaintiff that there were two open teaching positions for the fall 2016 semester, ATOC 1050 and ATOC 1060.  (*Id.* ¶ 2.)  After interviewing six candidates, Dr. Cassano hired Plaintiff to teach ATOC 1050.  (ECF No. 80-5 at 1, ¶ 6.)  The ATOC Chair, Dr. Randall, approved Dr. Cassano's decision, and the University hired Plaintiff as a part-time lecturer for the fall 2016 semester in July 2016.  (ECF No. 80 at 4, ¶¶ 3–5.)

On July 27, 2016, Dr. Melissa Nigro, the coordinator of the Learning Assistant program, informed Plaintiff that he would have four Learning Assistants, undergraduate students who assist in large-enrollment science courses.  (*Id.* ¶ 6.)  However, after the semester began, one or more of the Learning Assistants approached Dr. Nigro with concerns that Plaintiff had not engaged them in class as expected.  (*Id.* ¶ 7.)  When Dr. Nigro contacted Plaintiff to ask various questions regarding his use of the Learning Assistants, Plaintiff asked Dr. Nigro whether she was "trying to micromanage [his]

---

[3] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

teaching" and informed her that he did not "see any reason for all the questions" that she asked. (ECF No. 80-8 at 1; ECF No. 80-9 at 1.)

Over the course of the semester, students in Plaintiff's class and at least one Learning Assistant approached Dr. Nigro and Dr. Randall with concerns about Plaintiff's class. (ECF No. 80 at 5, ¶ 9; ECF No. 80-5 at 1–2, ¶¶ 7–8, 13; ECF No. 80-10; ECF No. 80-13; ECF No. 80-14.) On September 1, 2016, Dr. Randall met with Plaintiff regarding the concerns raised about his class. (*Id.* ¶ 11.) She also attended Plaintiff's class and wrote a peer review. (*Id.*)

On October 10, 2016, Dr. Randall e-mailed Dr. Nigro and Dr. Cassano and informed them that she had received another complaint from a student who felt that Plaintiff was "hard to approach and [has] not provided the necessary help." (ECF No. 80-14 at 1–2.) Dr. Nigro informed Dr. Randall that the Learning Assistants "have also had a difficult time approaching [Plaintiff] with concerns about the class." (*Id.* at 1.) Dr. Cassano responded to Dr. Randall's e-mail, stating that he was "sorry to hear that problems with [Plaintiff] are continuing" and that he "will plan to not hire him for any future lecturer positions in ATOC." (ECF No. 80-15 at 1.) Dr. Randall agreed that they should not hire Plaintiff again. She clarified, however, that "I was not trying to criticize the decision to hire [Plaintiff], with which I agreed; there was no reason to suspect that we'd be encountering these types of problems." (*Id.*)

On October 27, 2016, Dr. Cassano hired Guiliana Turi to teach ATOC 1050 for the 2017 spring semester. (*Id.* ¶ 26.)

On November 9, 2016, Plaintiff e-mailed Dr. Randall to inquire whether there were any teaching vacancies for the next school year.  (*Id.* ¶ 20.)  Dr. Randall informed Plaintiff that "[w]e are not looking for any lecturers at the current time" but thanked him for his interest.  (*Id.* ¶ 21.)  Plaintiff's contract to teach ATOC 1050 ended in December 2016.  (*Id.* ¶ 22.)

## III.  ANALYSIS

Although Plaintiff did not file timely Objections to the Recommendation, the Court will review the Recommendation *de novo*.  After conducting a *de novo* review, the Court concludes that Magistrate Judge Crews's analysis of the issues was thorough, and his conclusions were correct.

Plaintiff claims that Defendants did not hire him because of his race and national origin and has asserted claims under Title VII and 42 U.S.C. § 1983.  (ECF No. 13 ¶¶ 123–31, 138–45.)  Defendants moved for summary judgment on both claims, arguing: (1) Plaintiff had not established his prima facie claims of discrimination under Title VII and § 1983; and (2) that the University had valid, non-discriminatory reasons for deciding not to rehire Plaintiff that are not pretextual.  (ECF No. 80.)

"In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII."  *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008).  "To make out a prima facie case of discrimination, [Plaintiff] must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated

6

employees." *Id.* To prevail, a plaintiff must establish discrimination through either direct or indirect evidence. *Id.*

Where, as here, Plaintiff offers no direct evidence of discrimination, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies to Plaintiff's claims. Under this framework,

> the plaintiff 'must carry the initial burden under the statute of establishing a prima facie case of racial discrimination.' Once the plaintiff has established a prima facie case, '[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason' for its employment action. If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual.

*Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000) (quoting *McDonnell Douglas*, 411 U.S. at 802). To establish a genuine issue of material fact as to pretext, a plaintiff must demonstrate that a defendant's "proffered non-discriminatory reason is unworthy of belief." *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1065 (10th Cir. 2009) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)). A plaintiff can meet this standard by producing evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006). "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City & Cnty. of Denver*, 365 F.3d 912,

924–25 (10th Cir. 2004) (internal quotations, citations, and alterations omitted). "An articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment. The test is good faith belief." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998) (internal citation omitted).

Judge Crews determined that he did not need to determine whether Plaintiff established a prima facie case of its failure to hire claims under either Title VII or § 1983 because he determined that Plaintiff "has not made a showing of pretext" under the *McDonnell Douglas* framework. (ECF No. 93 at 5.) Specifically, he determined that "Defendants claim their legitimate, non-discriminatory reason for not hiring [Plaintiff] was the unusually high number of complaints regarding his performance" and that Plaintiff "has offered no competent evidence suggesting this reason is pretextual." (*Id.*)

Plaintiff objects to Judge Crews's analysis on two grounds, asserting that Judge Crews: (1) did not apply the proper standard in analyzing Plaintiff's claims; and (2) did not properly consider Plaintiff's evidence of pretext. (ECF No. 94 at 3–6.)

**A.     Applicable Standard**

Plaintiff tardily objects to Judge Crews's analysis of pretext, asserting that "Plaintiff is not required to show that a stated reason [for Defendants' decision to not rehire Plaintiff] is false or present evidence that contradicts Defendants' reasons." (ECF No. 94 at 5.) Instead, according to Plaintiff, "Defendants needed to show to the Court that no reasonable fact-finder can conclude that their reason is nothing [*sic*] but a pretext." (*Id.* at 6.)

8

If imposed, Plaintiff's standard would effectively require Defendants to prove a negative, *i.e.*, requiring Defendants to disprove that their decision to not rehire Plaintiff was based on anything other than the student complaints. This is not the standard set forth under the *McDonnell Douglas* framework.

As stated above, after a plaintiff establishes a prima facie case of racial discrimination, "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for its employment action." *Kendrick*, 220 F.3d at 1226. Here, the University has satisfied this step by explaining that Plaintiff was not rehired based on the number of complaints that Defendants received regarding Plaintiff's teaching. Because Defendants have made this showing, the burden shifts back to the plaintiff to "show that the defendant's justification is pretextual." *Id.* Plaintiff may satisfy his burden by "advanc[ing] evidence upon which a factfinder could conclude that the [Defendants'] allegedly nondiscriminatory reasons for the employment decisions are pretextual." *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1134 (10th Cir. 2010).

**B.    Whether Plaintiff Has Shown Defendants' Justification is Pretextual**

Plaintiff objects to Judge Crews's determination that Plaintiff has offered no competent evidence suggesting Defendants' non-discriminatory reason for not hiring Plaintiff was pretextual, arguing that Judge Crews failed to consider key evidence. (ECF No. 94 at 3–4.) Plaintiff cites Dr. Randall and Dr. Cassano's peer reviews of Plaintiff's class, as well as a conversation in which Dr. Cassano informed Plaintiff that he was happy with the decision to have hired him. (*Id.*) Based on this evidence,

9

Plaintiff argues that there is a genuine dispute regarding whether Plaintiff's "supposed 'poor performance' is the actual reason for their adverse action or a mere pretext." (*Id.* at 4.)

In response, Defendants argue that "[r]eview of these reports and the undisputed evidence . . . shows that there is no inconsistency" between the peer reviews and Defendants' reason for not rehiring Plaintiff. (ECF No. 96 at 3.) They point out that Dr. Randall's affidavit explains that Defendants' primary concern regarding Plaintiff was the "number of complaints Dr. Randall received about him from the students and the Learning Assistants." (*Id.*) According to Defendants, Dr. Randall and Dr. Cassano's peer reviews mention some of the same concerns that were communicated by the students, including the slow class pace, students leaving early, and the lack of use of "clickers" and creation of opportunities for in-class discussion. (*Id.*)

At best, the peer reviews demonstrate that Dr. Randall and Dr. Cassano gave Plaintiff modestly positive reviews after observing his class on September 1, 2016 and November 3, 2016, respectively, which note Plaintiff's teaching strengths and weaknesses.[4] (*See* ECF Nos. 22-1, 22-2.) However, as Dr. Randall noted after her peer review, she was "not able to observe any one-on-one interactions, which is where [Plaintiff] has had trouble in the past," and her peer review does not discuss the Learning Assistant sessions. (ECF No. 80-12.)

---

[4] The Court notes that Dr. Cassano's November 2016 peer review occurred after he stated that he was not planning to rehire Plaintiff for future teaching positions. (*See* ECF No. 80-15.)

10

Moreover, these peer reviews do not contradict the fact that Dr. Randall received numerous complaints from students and at least one Learning Assistant.[5] (*See* ECF Nos. 80-5, 80-8, 80-10, 80-13, 80-14, 80-15.) Nor does it contradict Dr. Randall's unrebutted assertion that "[b]ased on [her] experience as [ATOC] Chair, it was unusual to have this many concerns brought up about the same lecturer during a single semester."[6] (ECF No. 80-5 at 2, ¶ 14.) As such, the peer reviews neither demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendants' explanation that the University did not rehire Plaintiff based on the student complaints, nor create an inference that "the employer did not act for the asserted non-discriminatory reasons." *Argo*, 452 F.3d at 1203. This is particularly true where Dr. Cassano wrote that he would "plan to not hire [Plaintiff] for any future lecturer positions in ATOC" in response to Dr. Randall's e-mail informing him that she had received additional student complaints regarding Plaintiff. (ECF No. 80-15.)

Moreover, it is significant that Dr. Cassano made both the decision in July 2016 to hire Plaintiff for the fall 2016 semester and the subsequent decision in October 2016

---

[5] Likewise, the fact that Dr. Cassano told Plaintiff on November 16, 2016 that he enjoyed his class and was happy with the decision to have hired him for one semester does not contradict the explanation that he decided not to rehire Plaintiff for future semesters based on the high number of student complaints.

[6] Plaintiff has denied this assertion. (ECF No. 85 at 3.) However, he provides no evidence that contradicts Dr. Randall's assertion.

11

to not rehire Plaintiff for future available teaching positions.[7]  (ECF No. 80-5 at 1, ¶ 6, ECF No. 80-15 at 1.)  In cases like this one, where "the employee was hired and [not rehired] by the same person within a relatively short time span," there is a "a strong inference that the employer's stated reason for acting against the employee is not pretextual."  *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006) (finding that where "[m]ost of the same individuals . . . who decided to terminate [plaintiff] for job abandonment had also hired her twice, fully aware of her race and national origin[,] [i]t makes little sense to decide that these individuals terminated [plaintiff] roughly ten months later because of her race and/or national origin]").

Because Plaintiff has failed to provide the Court with evidence which at a minimum establishes a genuine issue of disputed fact as to whether Defendants' decision to not rehire Plaintiff after receiving numerous student complaints was a pretext for racial discrimination, Defendants are entitled to summary judgment on Plaintiff's Title VII and § 1983 claims.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS that:

1. Plaintiff's "Objections to Recommendation RE: Motion for Summary Judgment [#93]" (ECF No. 94) are OVERRULED;

---

[7] Plaintiff also argues that Judge Crews did not consider the various explanations that Defendants told Plaintiff when he previously applied for teaching positions.  (ECF No. 94 at 4–5.)  However, the mere existence of differing explanations for Defendants' decision not to hire Plaintiff for prior teaching opportunities do not demonstrate that Defendants' decision not to rehire Plaintiff in 2017 was a pretext for racial discrimination.  After all, Defendants *did* hire Plaintiff for the fall 2016 semester, and they have provided evidence demonstrating their

2. Judge Crew's Recommendation Re: Motion for Summary Judgment [#83] (ECF No. 93) is ADOPTED IN ITS ENTIRETY;

3. Defendants' Motion for Summary Judgment (ECF No. 80) is GRANTED;

4. Plaintiff's claims are dismissed with prejudice;

5. Judgment shall enter in favor of Defendants and against Plaintiff, and each party shall bear his or their costs;

6. The Clerk shall terminate this action.

Dated this 23rd day of February, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge

---

decision to not rehire Plaintiff for future teaching positions was made in response to student complaints.  (*See* ECF No. 80-15.)